**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **IN RE WEBVENTION LLC '294 PATENT LITIGATION** | ) ) ) | **MDL NO. 11-MD-2294** **JURY TRIAL DEMANDED** |
| WEBVENTION LLC<br><br>Plaintiff,<br>v.<br><br>ADIDAS AMERICA INC., et al.,<br><br>Defendants. | ) ) ) ) ) ) ) | 1 :11-cv-03623-CCB |
| WEBVENTION LLC<br><br>Plaintiff,<br>v.<br><br>ALLERGAN, INC., et al.,<br><br>Defendants. | ) ) ) ) ) ) ) | 1 :11-cv-03624-CCB |
| WEBVENTION LLC<br><br>Plaintiff,<br>v.<br><br>CAMPBELL SOUP CO., ET AL.,<br><br>Defendants. | ) ) ) ) ) ) ) | 1:12-cv-00003-CCB |
| WEBVENTION LLC<br><br>Plaintiff,<br>v.<br><br>A/X ARMANI EXCHANGE LLC; PRESIDIO INTERNATIONAL, INC.<br><br>Defendants. | ) ) ) ) ) ) ) | 1:12-cv-00017-CCB |
| WEBVENTION LLC<br><br>Plaintiff,<br>v.<br><br>BEAZER HOMES USA, INC.; BEAZER HOMES TEXAS HOLDINGS, INC.; BEAZER GENERAL SERVICES, INC. | ) ) ) ) ) ) ) | 1:12-cv-00004-CCB |

| | | |
|---|---|---|
| Defendants. | ) | |
| WEBVENTION LLC<br><br>　　　Plaintiff,<br>　　v.<br><br>ENTERTAINMENT EARTH, INC.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:12-cv-00006-CCB |
| WEBVENTION LLC<br><br>　　　Plaintiff,<br>　　v.<br><br>ERNST & YOUNG LLP<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:12-cv-00007-CCB |
| WEBVENTION LLC<br><br>　　　Plaintiff,<br>　　v.<br><br>GNC HOLDINGS, ET AL.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:12-cv-00016-CCB |
| WEBVENTION LLC<br><br>　　　Plaintiff,<br>　　v.<br><br>LANDSTAR SYSTEM INC., ET AL.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:12-cv-00009-CCB |
| WEBVENTION LLC<br><br>　　　Plaintiff,<br>　　v.<br><br>SUR LA TABLE, INC.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:12-cv-00011-CCB |
| WEBVENTION LLC<br><br>　　　Plaintiff,<br><br>　　v. | )<br>)<br>)<br>)<br>) | 1:12-cv-00013-CCB |

| | | |
|---|---|---|
| UNIVERSAL FOREST PRODUCTS, INC<br><br>Defendants. | )<br>)<br>) | |
| WEBVENTION LLC<br><br>Plaintiff,<br>v.<br><br>VITACOST.COM, INC.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:12-cv-00014-CCB |
| NOVARTIS CORPORATION,<br><br>Plaintiff,<br>v.<br><br>WEBVENTION HOLDINGS LLC, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:11-cv-3620-CCB |
| MARIE CLAIRE/HEARST *et al.*,<br><br>Plaintiffs,<br>v.<br><br>WEBVENTION HOLDINGS LLC, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:11-cv-3622-CCB |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STAY THE PROCEEDINGS PENDING REEXAMINATION OF THE '294 PATENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................i-ii

I.      INTRODUCTION ...................................................................................... 1

II.     ARGUMENT ............................................................................................ 2

        A.     The Early Stage of the MDL Proceedings and Underlying Actions Support
               a Stay ............................................................................................... 2

        B.     There is No Prejudice to Webvention ................................................... 3

               1.     There is No Cognizable Prejudice Inherent to the Ex Parte
                      Reexamination Process ........................................................... 3
               2.     Delay is Not a Source of Prejudice to Webvention ..................... 6
               3.     Maryland Precedent Does Not Weigh Against a Stay ................. 8
               4.     Litigation Costs Are Relevant to the Stay Analysis.................... 8

        C.     The Reexamination Will Simplify Issues .............................................. 9

        D.     Webvention's Counterproposals for a "Mini-Markman" Are Flawed ................. 12

III.    CONCLUSION....................................................................................... 13

# **TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Akzenta Paneele* + *Profile GmbH v. Unilin Flooring N.C. LLC*, 464 F. Supp. 2d 481 (D. Md. 2006)…………………………………………………………………………..............8

*Am. Piledriving Equip., Inc. v. Geoquip, Inc.*,
637 F.3d 1324 (Fed. Cir. 2011) ........................................................................................11

*In re Bridgestone/Firestone, Inc.*, 256 F. Supp. 2d 884 (S.D. Ind. 2003)……………………………………………..3

*CIAS, Inc. v. Alliance Gaming Corp.*,
504 F.3d 1356 (Fed. Cir. 2007) ........................................................................................11

*Cole v. Kimberly-Clark Corp.*,
102 F.3d 524 (Fed. Cir. 1996) ..........................................................................................11

*CVI/Beta Ventures, Inc. v. Tura LP*,
112 F.3d 1146 (Fed. Cir. 1997) ........................................................................................10

*DeShazo v. Smith*, 1:05cv1046 (JCC),
97 A.F.T.R.2d (RIA) 2249, 2006 U.S. Dist. LEXIS 26293 (E.D. Va. Apr. 18, 2006).........6

*E.I. DuPont & Co. v. Phillips Petroleum Co.*,
849 F.2d 1430 (Fed. Cir. 1988) ..........................................................................................4

*Ex parte Ronald A. Katz Tech. Licensing L.P.*,
Appeal 2009-000283, 2010 WL 1259722 (B.P.A.I. Mar. 31, 2010)……………………………………………4-5

*Graham-White Mfg. Co. v. Ell-Con Nat'l, Inc.*,
Civil Action No. 6:05-0396-HFF-WMC, 2006 U.S. Dist. LEXIS 68754 (D. SC. Sept. 22, 2006).......9

*In re Mut. Funds Inv. Litig.*,
767 F. Supp. 2d 542 (D. Md. 2011)....................................................................................3

*Microlinc, LLC v. Intel Corp.*,
Civil Action No. 2:07-CV-488 TJW, 2010 WL 3766655 (E.D. Tex. 2010) ......................5

*Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*,
Civil No. JKB-09-2657, 2011 WL 836673 (D. Md. Mar. 3, 2011)....................................8

*Pall Corp. v. Hermasure Inc.*, 181 F.3d 1305 (Fed. Cir. 1999)……………………………......................................................12-13

*Pegasus Dev. Corp. v. DirecTV, Inc.*,
Civ. A. No. 00-1020-GMS, 2003 WL 21105073 (D. Del. May 14, 2003)........................9

*Perricone v. Unimed Nutritional Servs.*,
Civil Action No. 3:01CV512(CFD), 2002 U.S. Dist. LEXIS 17613 (D.Conn. 2002) ........9

*Phillips v. AWH Corp.*, 415 F.3d 1301 (Fed. Cir. 2005)…………………………………………………....4-5

*Profile GmbH v. Unilin Flooring N.C. LLC,*
    464 F. Supp. 2d 481 (D. Md. 2006)....................................................................................8

*Serio-US Indus. v. Plastic recovery Techs. Corp.*, 459 F. 3d 1311 (Fed. Cir. 2006)......................................12

*Shared Memory Graphics, LLC v. Apple, Inc.,*
    812 F. Supp. 2d 1022 (N.D. Cal. 2010)..........................................................................12

*Southwire Co. v. Cerro Wire, Inc.,*
    750 F. Supp. 2d 775 (E.D Tex. 2010)................................................................................5

*In re Temporomandibular Joint (TMJ) Implants Products Liability Litig.,*
    97 F.3d 1050 (8th Cir. 1996)..............................................................................................3

*Tenneco Auto. Operating Co. v. Hyrad Corp.,*
    02CV0728, 2002 U.S. Dist. LEXIS 13311 (N.D. Ill. Jul. 19, 2002) ................................6

**FEDERAL STATUTES**

35 U.S.C. § 315(c) (2002) ....................................................................................................5

**FEDERAL REGULATIONS**

37 C.F.R. § 1.913 (2011) ......................................................................................................5

**UNREPORTED DECISIONS**

*Parallel Networks, LLC v. Abercrombie & Fitch, et al.,*
    Case No. 6:10–cv–111 (E.D. Tex. filed Mar. 29, 2010)..................................................11

*Webvention LLC v. Adidas*, No. 2:10-cv-0410 (E.D.Tex. filed October 5, 2010)................................2

*Webvention LLC v. Allergan*, 2:2011cv00225, (E.D.Tex. filed Apr. 19, 2010)................................3

Defendants respectfully submit this Reply Memorandum in Support of Defendants'

Motion to Stay the Proceedings Pending Reexamination of the '294 Patent, in response to

Webvention LLC's and Webvention Group LLC's (collectively, "Webvention") Response in

Opposition to Defendants' Motion to Stay Pending Reexamination ("Opposition").

## I.   <u>INTRODUCTION</u>

Webvention's Opposition confirms that the relevant facts are not in dispute and support a

stay under the three-factor test:  the early stage of this MDL proceeding, as well as the

underlying actions at the time of consolidation; the cap on Webvention's potential damages

recovery and unavailability of any non-monetary remedy; Webvention's delay in enforcing the

patent; Webvention's delay in disclosing the "Hands-On Hypercard" reference to the PTO, the

admitted basis for the current reexamination; and the pending rejection of claim 28 of the '294

Patent by the PTO — the only independent claim asserted by Webvention — as anticipated by this

reference.

Rather than confront these facts, Webvention's Opposition consists mostly of attacks on

straw man arguments, misstatements of the law and facts, citation to inapposite and irrelevant

authority, well-worn rhetoric, and baseless innuendo.  Despite spanning 40 pages, the Opposition

largely avoids addressing the actual facts and arguments relevant to the three-factor analysis.

Instead, Webvention improperly accuses the defendants of relying on reexamination statistics,

general arguments regarding prejudice and simplification, and prognostications about the

outcome of the reexamination.  Ironically, it is Webvention's Opposition that boils down to

unavailing abstract arguments.

Finally, Webvention's counterproposals for a "mini-*Markman*" process are flawed.  First,

it is inefficient and illogical to proceed with claim construction in the abstract, without the

context provided by Webvention's infringement contentions, which is necessary to identify a

small number of potentially case-dispositive claim terms that would need to be the subject of any "mini-*Markman*" proceeding.  Second, it is equally inefficient to require defendants to serve invalidity contentions as a prerequisite to a "mini-*Markman*", given that the underlying premise of this process is to avoid the parties or the Court having to incur unnecessary costs.

## II.   ARGUMENT

### A.   The Early Stage of the MDL Proceedings and Underlying Actions Support a Stay

Webvention acknowledges that discovery has not yet begun in any of the underlying cases, and none of the cases has progressed beyond service of infringement contentions.  A number of defendants have not yet answered Webvention's complaints, and pending motions to dismiss have been put to the side.  As a practical matter, defendants are seeking a stay at the earliest possible opportunity following granting of the current reexamination, and consolidation of the underlying cases pursuant to the Judicial Panel on Multidistrict Litigation's Order.

Webvention nonetheless claims that it has been waiting more than 18 months to have "its day in court," presumably a reference to the *Webvention LLC v. Adidas* case, No. 2:10-cv-0410, filed by Webvention in the Eastern District of Texas in October 2010.  Docket Index No. 165 (Opposition at 25).  However, Webvention does not mention that it has in fact concluded litigation with almost all of the companies it has sued in the cases it filed prior to April 2011.  Specifically, all 19 defendants sued in its first case (filed in July 2010) have settled; only three[1] of the 20 companies sued in the *Adidas* case remain; and only four[2] of the 20 from the

---

[1] The Coca-Cola Company, Macy's Inc., and Zale Delaware, Inc.

[2] Nordstrom, Inc., L.L. Bean, Inc., Ralph Lauren Corporation, and the Valspar Corporation.

*Webvention LLC v. Allergan* case, 2:11-cv-00225, also filed in the Eastern District of Texas in April 2011.  The majority of the Defendants in this MDL proceeding were sued by Webvention within the last year,[3] some as recently as November 2011, and only seven of the 22 Defendants have received preliminary infringement contentions from Webvention.

In sum, considering that (i) Webvention itself has delayed by spreading out its lawsuits over a period of more than a year, (ii) the current reexamination was granted on December 16, 2011, (iii) discovery has not yet begun in any of the cases, and (iv) Defendants notified the Court of their intent to seek a stay in their initial post-MDL correspondence in March of this year, Webvention cannot credibly argue that the stage of the proceedings weighs against a stay.

**B.    <u>There is No Prejudice to Webvention</u>**

Webvention's arguments concerning alleged prejudice do not address issues that courts have recognized as grounds for denying a stay pending patent reexamination.  As an initial matter, Webvention relies primarily on case law from the Eastern District of Texas, a court that admittedly takes a more restrictive view of stays pending reexamination in patent cases.  However, decisional law from the Texas court does not control here.  *See e.g.*, *In re Mut. Funds Inv. Litig.*, 767 F. Supp. 2d 542, 545 (D. Md. 2011) ("[T]he law of the circuit where the transferee court sits governs questions of federal law in MDL proceedings."); *see also In re Temporomandibular Joint (TMJ) Implants Prods. Liability Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) ("When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located.").

1.    <u>There is No Cognizable Prejudice Inherent to the Ex Parte Reexamination Process</u>

---

[3] Declaratory judgment plaintiffs Novartis Corporation brought suit in September, 2010, and the Hearst Corporation and Marie Claire/Hearst in June, 2011, both in Delaware.

Webvention makes various arguments concerning alleged prejudice arising from the *ex parte* reexamination process itself, including that (i) Defendants "are able to observe and preview Webvention's arguments during reexamination, and thereafter adjust its [*sic*] own validity arguments…" Docket Index No. 165 (Opposition at 7); (ii) the different claim construction standard that allegedly applies in reexamination; and (iii) the fact that no estoppel attaches to the outcome of *ex parte* reexaminations. *Id.* (Opposition at 7-8).  However, none of these arguments weighs against a stay.  Indeed, Webvention cites no authority recognizing any of these points as a source of relevant prejudice.

First, defendants do not somehow gain an advantage by being able to "observe and preview Webvention's arguments during reexamination." *Id.* (Opposition at 7).  Rather, such arguments become part of the intrinsic record of the '294 patent, and must be considered in construing the claims of the patent for purposes of both validity and infringement.  *See e.g., E.I. DuPont & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1439 (Fed. Cir. 1988) (reversing and remanding where district court failed to consider the impact of the patentee's statements in merged reissue/reexamination proceedings on claim construction and infringement).  This is one reason that a stay is appropriate even if independent claim 28 ultimately survives reexamination.

Similarly, Webvention fails to explain how the different claim construction standard that applies in reexamination is somehow prejudicial.  In any event, Webvention is incorrect – the PTO does not apply the "broadest reasonable construction" standard to reexamination of expired patents.  Rather, it applies a standard more akin to that applicable to claim construction in this infringement litigation.  *See e.g., Ex parte Ronald A. Katz Tech. Licensing L.P.*, Appeal 2009-000283, 2010 WL 1259722, at *7-8 (B.P.A.I. Mar. 31, 2010) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*), the current, seminal case governing claim construction in

infringement litigation). Webvention knows this to be true because Webvention cited the applicable standard for expired claims to the Patent and Trademark Office in the earlier reexamination proceedings. *See* Ex. A,[4] October 29, 2010 Patent Owner's Statement of Interview in Reexamination Proceedings Nos. 90/011,028 and 90/011,229.

Finally, Webvention is correct that *ex parte* reexamination is "effectively a one-way street," but in the direction of <u>Webvention</u> because the Defendants have played no role in any of the three requests for reexamination, nor do they have any ability to do so.  Because of the minimal participation by the requester, Congress did not mandate that any estoppel attach to the outcome of the *ex parte* reexamination process.[5]  It is correct that limited estoppel attaches to *inter partes* reexaminations carried to conclusion.  However, *inter partes* reexamination is not even available for the '294 patent because it was filed before *inter partes* reexamination proceedings were created.[6]  And Webvention's argument is a complete non-sequitur, as even if the reexamination was *inter partes*, no estoppel would apply because, notwithstanding Webvention's repeated innuendo, none of the defendants is a reexamination requester.  35 U.S.C. § 315(c) (2002) (estoppel applies only to the third party that requests the *inter partes*

---

[4] Citations in the format "Ex. _" are to exhibits to the declaration of Steven J. Rizzi filed herewith.

[5] Neither this Court, nor, to the Defendants' knowledge, any court other than the Eastern District of Texas, has required a defendant in a patent infringement case seeking a stay pending *ex parte* reexamination to "stipulate to estoppel with respect to that art which was the subject of reexamination," as Webvention requests.  Docket Index No. 165 (Opposition at 8 n.2, 13 n. 4). In addition, this is not a uniform rule even in the Eastern District of Texas.  *See, e.g.*, *Southwire Co. v. Cerro Wire, Inc.*, 750 F. Supp.2d 775 (E.D Tex. 2010) (granting unconditional stay pending reexamination); *Microlinc, LLC v. Intel Corp.*, Civil Action No. 2:07-CV-488 TJW, 2010 WL 3766655 (E.D. Tex. 2010) (same).

[6] 37 C.F.R. § 1.913 (2011) (*inter partes* reexamination available only for patents filed after November 29, 1999).

reexamination).  For all these reasons, the Defendants' ability to challenge the validity of

surviving claims in the litigation is in no way a second bite at the apple as Webvention contends.

> 2.      Delay is Not a Source of Prejudice to Webvention

Webvention's reliance on general statistics for the average duration of reexaminations,

overused rhetoric ("justice delayed is justice denied"), and inapposite case law from the Eastern

District of Texas do not address the proper, fact-specific inquiry for prejudice.  As Webvention

itself argues, it is improper to "recite such generalities without citing evidence specific to this

case."  Docket Index No. 165 (Opposition at 19).

Significantly, Webvention does not dispute the facts relevant to the prejudice inquiry in

this case, including that it is responsible for significant delay in multiple respects:

- Delay in bringing suits for infringement;

- Delay in disclosing the Hands-On HyperCard reference during the earlier reexaminations; and

- Delay in prosecuting the current reexamination.

Webvention's generalized arguments about alleged "indefinite delay" should be accorded little

weight in the context of its own culpable conduct.  *DeShazo v. Smith*, 1:05-cv-1046 (JCC), 97

A.F.T.R.2d (RIA) 2249, 2006 U.S. Dist. LEXIS 26293, at *11 (E.D. Va. Apr. 18, 2006) ("Undue

delay and unclean hands prohibit the [p]laintiff from employing equity."); *see also Tenneco*

*Auto. Operating Co. v. Hyrad Corp.*, 02 C 0728, 2002 U.S. Dist. LEXIS 13311, at *7 (N.D. Ill.

July 19, 2002) ("[T]he plaintiff can not come into court with unclean hands.").

In addition, the other facts cited in the Opening Brief also bear on the Court's analysis

and support a stay, including Webvention's status as a non-practicing entity enforcing an expired

patent; the cap on its potential damages recovery; and the relevance of the reexaminations to the

principal asserted claim of the patent (claim 28).  None of these points is disputed by
Webvention.

　　　　Moreover, Webvention's complaints about indefinite delay do not withstand scrutiny.  In
particular, Webvention does not dispute that the only scenario where the current reexamination
endures substantially longer than the one year it took to resolve the earlier reexaminations is if (i)
the PTO maintains its rejection of claim 28, which Webvention reiterates it "expects to be able to
traverse," Docket Index No. 165 (Opposition at 11, n.3); and (ii) Webvention elects to continue
to challenge the PTO's determination, first to the PTO Board of Appeals and Interferences, and
then to the Court of Appeals for the Federal Circuit.  These decisions are of course completely
within Webvention's control.  And as noted in the Opening Brief, Webvention also has control
over the pace of the current reexamination, and can minimize any delay by promptly responding
to PTO actions.  For example, Webvention need not wait until the June 13, 2012, deadline to file
its response to the April 13, 2012, office action, particularly since it has apparently already
formulated its arguments.  Docket Index No. 165 (Opposition at 39-40).

　　　　Likewise, Webvention does not dispute that its potential damages are capped and
terminated as of the October 2010 expiration of the patent, and fails to explain how it is
prejudiced in any meaningful way by even an indefinite delay.

　　　　Webvention's argument that a stay risks the loss of evidence is also unavailing,
particularly given its own extensive delay.  In fact, given Webvention's delay in enforcing the
'294 patent, Defendants are far more likely to have already been prejudiced by the loss of
evidence of invalidity, which must predate the February 7, 1990, filing date of the patent, as well
as evidence relating to their laches defenses.  The relatively short additional delay resulting from

7

a stay does not materially impact the risk of loss of additional evidence, particularly since the parties are subject to document preservation obligations.

### 3.  Maryland Precedent Does Not Weigh Against a Stay

The two relevant decisions from this Court also do not support the argument that prejudice in this case weighs against a stay.  For example, *Mike's Train House, Inc. v. Broadway Ltd.  Imports, LLC*, Civil No. JKB-09-2657, 2011 WL 836673, at *1 (D. Md. Mar. 3, 2011) involved direct competitors fighting for market share in the model train market, and the potential for injunctive relief for infringement of an unexpired patent.  In addition, the defendant itself filed the request for reexamination more than a year after suit was filed, after "the parties had already engaged in extensive litigation, including discovery, filing of dispositive motions, and filing of claim construction documents," with no office action yet issued by the PTO  *Id.*

Similarly, *Akzenta Paneele + Profile GmbH v. Unilin Flooring N.C. LLC*, 464 F. Supp. 2d 481, 484 (D. Md. 2006), also appears to have involved direct competitors, and is readily distinguishable because it was the plaintiff/patent-holder that sought reexamination of its own patents after suing for infringement.  The defendant opposed plaintiff's motion to stay because delaying the case would "1) increase their potential liability, and 2) place a cloud of uncertainty over their operations for the duration of the reexamination."  *Id.* at 484-85.  Neither of these considerations is applicable in this case.  Moreover, in *Akzenta*, the motion for a stay was filed before the PTO had even granted the request for reexamination.  Given the very different facts of this case, neither of these cases is particularly instructive.

### 4.  Litigation Costs Are Relevant to the Stay Analysis

Webvention's argument that "litigation costs have never been a basis to stay a lawsuit" Docket Index No. 165 (Opposition at 2) is not only contrary to the law, but contrary to Webvention's representation that it shares in defendants' objective to minimize the costs of

litigating this case.  As noted in the Opening Brief, the likelihood that the costs will be reduced

for both the Court and the parties is a factor that courts have relied on in granting a stay pending

reexamination.  *Pegasus Dev. Corp. v. DirecTV, Inc.*, Civ. A. No. 00-1020-GMS, 2003 WL

21105073, at \*2 (D. Del. May 14, 2003); *see also  Perricone v. Unimed Nutritional Servs.,* Civil

Action No. 3:01CV512(CFD), 2002 U.S. Dist. LEXIS 17613 , at \*4-5 (D.Conn. 2002) (citing

"litigation costs" as a factor); *Graham-White Mfg. Co. v. Ell-Con Nat'l, Inc.*, Civil Action No.

6:05-0396-HFF-WMC, 2006 U.S. Dist. LEXIS 68754, at \*4 (D. SC. Sept. 22, 2006) (Citing

"reduction in burden on the parties and the court.").

### C.    The Reexamination Will Simplify Issues

Webvention misstates the law and Defendants' arguments in contending that the current

reexamination will not result in simplification of issues for litigation, going so far as to argue that

the reexamination will complicate the issues.  Webvention again relies on sound bites from

inapposite cases, and ignores the specific facts of this case.

First, simplification of issues does not depend on the possibility that "the PTO *may*

cancel all claims" of the '294 Patent, as Webvention argues.  Docket Index No. 165 (Opposition

at 14) (emphasis in original).  Indeed, only certain claims of the patent are even subject to

reexamination, two of which have been confirmed as patentable, as noted in Defendants'

opening brief.  Docket Index No. 163 at 10, n.12. Most importantly, however, Webvention does

not dispute that the focus of both its infringement assertions and the prior and current

reexaminations is claim 28 of the patent, the only independent claim it alleges to be infringed.

Thus, the relevant inquiry for this factor is not whether all claims of the patent will be

cancelled, or even all of the claims under reexamination, but rather claim 28.  Webvention

implicitly acknowledges as much by pledging to appeal if it is unable to traverse the PTO's

9

rejection of claim 28 in its upcoming response. Docket Index No. 165 (Opposition at 11 n.3; 39-40) (referencing arguments it intends to make in attempt to traverse rejection of claim 28).

Contrary to Webvention's twisted logic, simplification of the issues does not depend on the amendment of existing claims or addition of new claims. Docket Index No. 165 (Opposition at 22-23). If that were the case then a stay pending reexamination of an expired patent would never be appropriate, which is not the law. *See e.g.*, Ex. B, Order, *The Bd. of Trs. of The Leland Stanford Junior University v. Tyco Int'l LTD,* C.V. 00-10584-TJH (RCx), Docket Index No. 109 (Oct. 10, 2003) (granting stay of litigation pending reexamination of expired patent in suit). While Defendants do not claim to be able to predict the ultimate outcome of the reexamination proceeding, the only possibilities, as Webvention concedes, are either cancellation of claim 28, or confirmation in its current form. And Webvention does not dispute that cancellation of claim 28 will have a significant impact on its ability to maintain its infringement claims, if not result in dismissal of these actions in their entirety, the ultimate simplification.

If Webvention does succeed in arguing the patentability of claim 28, those arguments, which Webvention previews in its Opposition, will materially impact the most significant issues in this case: claim construction, infringement, and validity. *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1158 (Fed. Cir. 1997) ("[T]hrough statements made during prosecution or reexamination an applicant for a patent or a patent owner, as the case may be, may commit to a particular meaning for a patent term, which meaning is then binding in litigation."). Because the reexamination is focused on the very claim at the heart of Webvention's infringement assertions, there is thus a high likelihood that relevant intrinsic evidence will be created during the remainder of the reexamination process.

Proceeding in parallel necessarily means that the Court and parties would be working with a moving target, as the arguments Webvention makes to attempt to overcome the rejections may change the meaning of one or more terms of claim 28.  *See Am. Piledriving Equip., Inc. v. Geoquip, Inc.,* 637 F.3d 1324, 1336 (Fed. Cir. 2011) (Statements made during reexamination "inform the proper construction of the term.")*; CIAS, Inc. v. Alliance Gaming Corp.,* 504 F.3d 1356, 1362-63 (Fed. Cir. 2007) (construing claims to conform with positions taken by the patentee during reexamination); *Cole v. Kimberly-Clark Corp.,* 102 F.3d 524, 532 (Fed. Cir. 1996) (patentee estopped from asserting claim against subject matter surrendered during reexamination).

Thus, any minimal prejudice to Webvention due simply to delay of the litigation is far outweighed by the substantial benefits to be realized by awaiting completion of the reexamination.  If the rejection of claim 28 is upheld, the '294 patent will have suffered a mortal wound, and few if any issues will remain to be litigated.  If Webvention can overcome the rejection, the record yet to be developed in the PTO will almost certainly bear on claim interpretation, infringement, and validity, and the immediate next steps in the litigation.  In particular, Webvention will have to account for this record in the infringement contentions it has yet to serve on the majority of the Defendants, and the Defendants will likely rely on this record, as well as the infringement contentions, to identify the patent claim terms for construction.  Thus, awaiting the complete record of the reexamination will improve the likelihood that only a very small number of claim terms will need to be construed, which will minimize the Court's resources and the parties' litigation costs.

In short, under any scenario, the issues to be litigated in this case will be simplified by awaiting the outcome of the reexamination.

11

### D.      Webvention's Counterproposals for a "Mini-Markman" Are Flawed

Despite some heated rhetoric from Webvention, the parties are in substantial accord on how to proceed once the stay is lifted or the Court denies Defendants' motion to stay. The parties all favor a "mini–*Markman*" procedure, such as that used by Judge Davis in *Parallel Networks, LLC v. Abercrombie & Fitch, et al.*, Case No. 6:10–cv–111 (E.D. Tex. filed Mar. 29, 2010). *See* Opposition at 37–39 (Webvention's proposals). The parties differ only on the details: *e.g.*, the number of claim terms to be construed; the length of time between certain events; or the number and ordering of briefs. Defendants believe those issues can and should be ironed out without judicial intervention. *See* Defendants' Brief at 20 (suggesting that the parties negotiate a schedule and submitting their proposal by way of example).

One point raised by Webvention does require a direct response. The mini–*Markman* proceeding – which combines early claim construction of a few terms with a joint defense motion for summary judgment of non–infringement – only works if Defendants know which claims of the patent–in–suit they have been accused of infringing, and how. Defendants cannot identify common non–infringement defenses unless they know in what ways they have been accused of infringement. Service of infringement contentions is a necessary first step in the process. *See e.g.*, *Shared Memory Graphics, LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) (Infringement contentions "may lay the groundwork for an early motion for summary judgment and/or claims construction as to a few select claims."). The Federal Circuit has similarly noted that consideration of the accused device provides useful context to the claim construction process. *Serio-US Indus. v. Plastic Recovery Techs. Corp.*, 459 F.3d 1311, 1319 (Fed. Cir. 2006) ("[A] trial court may consult the accused device for context that informs the claim construction process."); *Pall Corp. v. Hemasure Inc.*, 181 F.3d 1305, 1308 (Fed. Cir. 1999)

("[I]t is convenient for the court to concentrate on those aspects of the claim whose relation to the accused device is in dispute.").

By contrast, early service of invalidity contentions would add needless cost as invalidity issues would be held in abeyance pending the outcome of the mini–*Markman*. Accordingly, Defendants propose that, upon lifting the stay or denying the Defendants' motion, the Court order Webvention to serve infringement contentions on all Defendants by a date certain, and further order the parties to meet and confer on a proposed scheduling order to govern the mini–*Markman* proceeding, which joint proposal would be submitted to the Court for approval. *Cf.* Steven J. Rizzi Declaration Exhibit R (Docket Index No. 163–20) (analogous order in *Parallel*).

## III.   <u>CONCLUSION</u>

For the foregoing reasons, the defendants respectfully request that the Court stay the present action in light of the ongoing reexamination proceedings relating to the '294 patent.

Dated: May 15, 2012                          Respectfully Submitted

                                   By:  /s/ Steven J. Rizzi
                                   Steven J. Rizzi
                                   Foley and Lardner LLP
                                   90 Park Avenue
                                   New York, New York 10016
                                   Telephone:  (212) 338-3543
                                   Facsimile:  (212) 687-2329
                                   Email:  srizzi@foley.com

                                   **_Attorneys for Defendant Las Vegas Sands_**
                                   **_Corp._**

                                   By:  /s/ Frederick D. Page
                                   Frederick D. Page
                                   Florida Bar No. 968587
                                   Holland & Knight LLP
                                   50 North Laura Street, Suite 3900
                                   Jacksonville, Florida  32202
                                   Telephone:  (904) 353-2000
                                   Facsimile:  (904) 358-1872
                                   Email:  fred.page@hklaw.com

                                   Charles McLaurin (#17984)
                                   Holland & Knight LLP
                                   2099 Pennsylvania Avenue, N.W., Suite 100
                                   Washington, DC  20006
                                   Telephone:  (202) 862-5986
                                   Facsimile:  (202) 955-5564
                                   Email:  charles.mclaurin@hklaw.com

                                   **_Attorneys for Landstar System, Inc. and_**
                                   **_Landstar System Holdings, Inc._**

                                   By:  /s/ Anthony F. LoCiero
                                   Anthony F. Lo Cicero
                                   Bar No. 1084698
                                   alocicero@arelaw.com
                                   Richard Mandaro
                                   David Boag
                                   AMSTER ROTHSTEIN & EBENSTEIN LLP
                                   90 Park Avenue
                                   New York, New York 10017
                                   Telephone:  (212) 336-8000
                                   Facsimile:  (212) 336-8001

***Attorneys for Defendant, Macy's, Inc.***

By:  /s/ Patrick R. Colsher
John F. Ward
Email: jward@wardzinna.com
Michael J. Zinna
Email: mzinna@wardzinna.com
David G. Lindenbaum
Email: dlindenbaum@wardzinna.com
Patrick R. Colsher
Email: pcolsher@wardzinna.com
Matthew C. Berntsen
Email:  mberntsen@wardzinna.com

WARD & ZINNA, LLC
380 Madison Avenue
New York, New York 10017
Phone:  (212) 697-6262
Facsimile:  (212) 972-5866

***Attorneys for Defendant Saks Incorporated***

By:  /s/ Scott E. Stevens
Scott E. Stevens
Texas Bar No. 00792024
Darrell G. Dotson
Texas Bar No. 24002010
STEVENS LOVE
P.O. Box 3427
Longview, Texas  75606-3427
Telephone:  (903) 753-6760
Facsimile:  (903) 753-6761
Email:  scott@stevenslove.com
Email:  darrell@stevenslove.com

***Counsel for Defendant***
***Universal Forest Products, Inc.***

By:  /s/ Mark P. Wine
Mark P. Wine (CA State Bar No. 189897)
Thomas J. Gray (CA State Bar No. 191411)
Benjamin S. Lin (CA State Bar No. 232735)
ORRICK, HERRINGTON & SUTCLIFFE
LLP
2250 Main Street, Suite 1100

Irvine, CA  92614-8255
Tel: 949-567-6700
Fax: 949-567-6710
Email:  mwine@orrick.com
Email:  tgray@orrick.com
Email:  blin@orrick.com

***Attorneys for Defendants Zale Delaware,
Inc., Ralph Lauren Corporation, GNC
Holdings, Inc., and General Nutrition
Investment Company***

By:  /s/ Alan M. Fisch
Alan M. Fisch
Jason F. Hoffman
Jeffrey M. Saltman
KAYE SCHOLER LLP
The McPherson Building
901 Fifteenth Street, NW
Washington, DC 20005-2327
Telephone: (202) 682-3500
Facsimile: (202) 682-3580
Email:  alan.fisch@kayescholer.com
Email:  jason.hoffman@kayescholer.com
Email:  jeffrey.saltman@kayescholer.com

***Attorneys for Plaintiffs Novartis Corporation,
Marie Claire/Hearst, and The Hearst
Corporation***

By:  /s/ Robert L. Lee
Robert L. Lee
Kamran Jivani
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Telephone: 404-881-7000
Facsimile: 404-253-8831
Email:  bob.lee@alston.com
Email:  kamran.jivani @alston.com

William H. Baker
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
Telephone: (212) 210-9400
Facsimile: (212) 922-3888

16

Email:  bill.baker@alston.com

Derek S. Neilson
ALSTON & BIRD LLP
2828 North Harwood Street
Suite 1800
Dallas, TX  75201
Telephone: (214) 922-3400
Fax: (214) 922-3899
Email:  derek.neilson@alston.com

***Attorneys for Defendants The Valspar
Corporation, The Coca-Cola Company***

 By:  /s/ Vivian S. Kuo
Vivian S. Kuo
Andrew R. Sommer
WINSTON & STRAWN LLP
1700 K Street N.W.
Washington, D.C. 20006
Telephone: (202) 282-5000
Facsimile: (202) 282-5100
Email: vkuo@winston.com
Email: asommer@winston.com

***Attorneys for Defendant The Huffington
Post.com, Inc.***

By:  /s/ Kevin M. Littman
Kevin M. Littman
Matthew B. Lowrie, Esq.
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA  02199-7610
Telephone:  (617) 342-4000
Facsimile:  (617) 342-4001

***Attorneys for Defendant Vibrant Media, Inc.***

By: /s/ Mark J. Peterson
Mark J. Peterson
Nebraska Bar No. 18850
Stinson Morrison Hecker LLP
1299 Farnam Street, Suite 1500
Omaha, NE  68102
Telephone:  (402) 930-1764

17

Facsimile:  (402) 829-8741
Email:  mpeterson@stinson.com

**Attorneys for Defendant HDR, Inc.**

By: /s/ Peter J. Brann
Peter J. Brann
pbrann@brannlaw.com
David Swetnam–Burland
dsb@brannlaw.com
Stacy O. Stitham
sstitham@brannlaw.com
BRANN & ISAACSON
184 Main Street; P.O. Box 3070
Lewiston, ME 04243–3070
(207) 786–3566

**Attorneys for Defendants L.L. Bean, Inc., J. Crew Group, Inc., Nordstrom, Inc., and Presidio International Inc.**

By:  /s/ Andy H. Chan
Thomas F. Fitzpatrick
Andy H. Chan
GOODWIN PROCTER LLP
135 Commonwealth Drive
Menlo Park, California 94025
Tel.:  650.752.3113
Fax:  650.853.1038
E-Mail:  tfitzpatrick@goodwinprocter.com
E-Mail:  achan@goodwinprocter.com

**Attorneys for Defendant Sur La Table, Inc.**

By:  /s/ Brian D. Range
Jose Villarreal
Brian D. Range
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
900 South Capital of Texas Highway
Las Cimas IV, Fifth Floor
Austin, Texas  78746-5546
Telephone:  (512) 338-5400
Facsimile:  (512) 338-5499

**Attorneys for Defendant Vitacost.com, Inc.**

18